Arthur Robert engaged in robberies and students at 54��029 nemd Casco Mellody Farm DST Trust implented Matteli, a college of his kin linked to the treasurer and makeup contractors who pretended acquaintances to the Department of Federal and Instructional District 288 and intervened in a second appellate's stew. Arguing on behalf of the appealants was Natalie A. Paluzzi. Arguing on behalf of Natalie, Mr. Kevin R. Ruhl. All right, Ms. Maluzzi, you may proceed when ready. Please feel free to adjust the microphone. May it please the court. My name is Natalie Maluzzi, and I represent the intervener appellant in this matter, the village of Vernon Hills. This case focuses on the fair and correct assessed value of the property located at 1111 North Milwaukee Avenue in Vernon Hills, known as the Atworth at Mellody Farms. The Atworth was built in 2018 and received a certificate of occupancy in February of 2019. In Lake County, properties are assessed on a quadrennial basis. In tax year 2019, it was a general assessment or a quadrennial assessment year. And in a quadrennial assessment year, the township assessors to actually view and determine the value of each property and assess the property at 33rd and a third of its fair cash value or one third of its fair cash value. The Atworth was reassessed in 2019 for $51.6 million fair market value by Assessor Peggy Freese. Two days before the tax year 2020 valuation date on December 30th, 2019, the appellee purchased the Atworth for $90.4 million, nearly $40 million more than Freese's valuation in tax year 2019. In non-quadrennial years, a township assessor may revise and correct an assessment as appears just. For tax year 2020, Assessor Feeney determined that the 2019 assessed value was incorrect and estimated the valuation of the Atworth as of January 1st, 2020 at approximately $71 million fair market value, which is approximately $20 million above Freese's estimated valuation for the previous tax year for $20 million less than the sale price. The plaintiff then filed assessment appeals for tax year 2020 before the Lake County Board of Review pursuant to statute and asserted that the assessment was above market value, lacked uniformity, and that the assessor illegally reassessed the Atworth in a non-quadrennial year. After hearing testimony and argument, the Board of Review determined the Atworth had not been assessed at market value in tax year 2019 and that the 2020 assessment was a lawful revision of the property's assessment and that the assessment proposed by the assessor in the 2020 tax year was just. The 2021 tax year merely maintained this 2020 assessment with the addition of the township factor and was also affirmed by the Board of Review. The appellate then filed suit in circuit court challenging the assessment for those 2020 and 2021 tax years. The circuit court made a ruling in this matter, which we are appealing here today. An issue before the court today is whether the property tax officials involved in this matter properly exercised their statutory authority in 2020 in establishing the value of the Atworth. There are three reasons why the trial court erred in its ruling in favor of the plaintiff appellee. First, the Board of Review considered the evidence presented an exercise of statutory ability to do whatever is necessary to make a just assessment for the Atworth and did not merely rubber stamp the assessor's valuation. Second, the 2019 valuation of the Atworth was objectively and subjectively incorrect so as to justify the revision and correction by Assessor Feeney. And third, valuation should have been considered by the court as it is a court issue in this case. As a starting point, I wanted to address the appropriate standard of review in this matter. It is our assertion that because the issues raised in this case is whether the assessed value of the property in question was based on an improper method of valuation, de novo standard review should be applied. Additionally, there are multiple issues of statutory interpretation which also require de novo review. The issues involved here are the lane interpreting of the laws governing tax assessors and boards of review and whether the law requires tax assessors to limit themselves to certain information when revising and correcting a general assessment. It also requires the examination of whether Assessor Freeney's methodology in assessing the Atworth was correctly done, which is akin to evaluating the appropriateness of valuation. Were there any credibility findings made by the court? There were some credibility findings. And those would not be de novo? Correct. We would say that minimum if there are issues, there are mixed issues of law and fact, which would have a clearly erroneous standard of review because every issue in this case involves a statutory interpretation. So even if there were credibility findings as to say what Assessor Freeney did or did not believe, it was whether that was within her authority under the statute and it met the definition of revision and correction to make a just assessment. So that minimum would be a mixed finding effect. The board review here, while the trial court and the parties discussed the assessor's actions at length, those arguments really are moot if the board review exercised its own judgment and made its own determination as the board review's power is broader than a township assessor's authority to just revise and correct in a non-quadrennial year. It has its own expansive independent authority to do whatever it deemed necessary to make a just assessment. To emphasize Section 16-55E of the Property Tax Code states that the board at any time before the revision of assessments is completed in every year increase, reduce, or otherwise adjust the assessment of any property making changes to the valuation as may be just and shall have full power over the assessment of any person and may do anything in regard to it may be necessary to make a just assessment. Is it fair to say that your position, at least I'm concerned that your position seems to be that if the quadrennial assessment isn't enough, then it can be revised and corrected? That is actually, I mean, the statute says that if a quadrennial assessment is not enough, the board review can always independently make changes to that in a non-quadrennial year under the statute. That's what Section 16-55E states. It can make a change in any year that it deems just. So you are advocating that? Yes, because that's what the statute explicitly says and the state case law says that they may do that. What's the point of a quadrennial year? And what's the point of the statute that says it's carried forward unless there's a need to revise and correct? The purpose is to make sure that the assessments are just and are fair because the overriding principle in Illinois law is that properties are assessed at one-third of their fair market value. I guess what I'm saying is, I hear what you're saying. Any time we want, any time we decide it was not enough, it can be revised and corrected. But in my opinion, you might be ignoring the other limiting language in the whole scheme, the statute, but also in the whole scheme. Again, what would be the point of a quadrennial? Let's just do it every year. Well, I mean, they look at it, that's why things look at it, and why property tax, by taxing. Because there's mutualization by, in mass, but the statute, in my opinion, doesn't appear to say any time anybody wants to or taxing somebody thinks it's unjust, the, an individual property can be reassessed. Well, we're not talking about some limitation, but I don't hear you talking about it. Well, it is, it is, as it appears just. And so the board, I'm right now talking about the board reviews authorization to make adjustments to any property in any years as it appears just. There's ample case law cited in our briefs that says that they can increase it in a non-quadrennial year, they can decrease it in a non-quadrennial year. They have to follow the statutory provisions of notice and hearing in order to do so. But they do have that explicit statutory authority if they determine it is just to make a change to the assessment even in a non-quadrennial year. Assessors are limited to making changes in a non-quadrennial year if it is incorrect and a revision and correction needs to be made, and that is the limit. But that is why there's a hearing. Also, taxpayers on a regular basis challenge in non-quadrennial years to try to lower their property taxes. So they're not also limited by, this is your assessment in the quadrennial year, you can't make any changes going forward. They routinely appeal their property taxes to get them lowered beyond the non-quadrennial year in subsequent years, and that is also allowed under the property tax code. So therefore, any year is fine. Correct. Every year is its own separate year. And the limitation is to try to have some consistency when it comes to assessors. Also, just it's not realistic to look and reassess and make a determination for every single property in the state of Illinois every single tax year. Is there any case that reads that broadly because I have not seen them? Yes, the key case cited specifically states that a board review has the authority to change an assessment in a non-quadrennial year. It found that it didn't exercise its authority in that case, but it explicitly said that it had the authority, and we cited some additional cases that also state have routinely found that the board review has the authority to change it in a non-quadrennial year. There was a recent case out of, I believe, the 4th District Jackson Generation that also found that it was a non-quadrennial year and they made a change, and that was upheld. The board review on its own motion increased the valuation of the property, sent notice to the taxpayer that they were increasing the property for a hearing, and increased it. It wasn't even by the assessor. They did it on its own motion. They have that explicit authority in the tax code with no restriction. Now, that can be challenged ultimately by the plaintiff if they don't agree with the board review's determination through the court proceeding, but they do have the statute and the case. Is that what happened here, though, the board? The board didn't. The board said no change. The board said no change. Is there a difference between that and the situation in Jackson? There was some difference in Jackson. In that case, the board on its own motion made a change. However, the statute does not limit it to only the board on its motion. It can make determinations in a property tax hearing before it. So here, there was a no change. By no change, the board review made a determination that the assessment chosen by the assessor was just and was correct. Now, it would be an illogical reading of the statute to say that if they would have made it $1 higher or $1 lower, that was exercising their independent authority. But because they agreed with the assessor's valuation, it somehow is no longer anything they can, you know, no longer within the purview of what the statute says. But the statute says they may do anything they deem necessary to make a just assessment. So if they determine that the board, no change is what is necessary to make a just assessment, then it is permissible. And that is irrespective of what the assessor could have done or did have done or would have originally done. So there are multiple times where a property owner comes in. They challenge their assessment. They seek a reduction. And instead, and maybe the assessor seeks a certain value, and the board review picks a different number. They make a determination that it's not one or the other. And they do this, you know, in a nonquadrennial year. And so that happens all the time. And in this case, they found that the number proposed by the assessor was a just assessment. What is sale chasing? Sale chasing is making, if there's a sale of the property, and you automatically just put the property at that sale. And I would say that that's... I'm sorry, your voice dropped off. A sale happens, and the assessor automatically places the value of the property at the sale price in a nonquadrennial year. And I would say that did not happen here. And the Gateway Walden case is a good example of how this more indicated that the sale in this case indicated that the 2019 valuation was incorrect. The Gateway Walden case, the property at issue was a January 1, 2011 data valuation. The plaintiff sought to reduce their property taxes and filed an appeal. They relied on the sale of the property that occurred in January 2012 to show that the January 2011 sale was incorrect and it should be lowered. And in that case, the assessing officials tried to say, well, no, you can't rely on that sale. It happened after the date of value. And the Gateway Walden court said that January 1 is not a magical number. You can consider information after the date of value. The best indication of market value is the arm's length transaction of the sale of a subject property. So for a hypothetical case... There's one thing I would like to comment on. Okay. I don't think Justice Ellis said in Gateway that the January 1 date is irrelevant. He said it wasn't a magic number and it wasn't going to limit, excuse me if I could just finish. Mm-hmm. The evidence that was only pointing to January 1, that's one thing I would make a comment on. I'm just going to comment on something else before you jump in. I understood Gateway Walden to be the triennial. That was a triennial assessment. In Cook County, they are triennial. Every other county is a triennial. Yes, I know that. Thank you. So it was in a revised and correct situation. And now you may have the floor. Okay, thanks. Thank you. Well, the important point is that in this case, if the property would have sold for less than the 2019 valuation, when it sold for $40 million more, if it would have sold for less, the plaintiff could have used evidence of that sale to say that no, the 2019 value is incorrect. The inverse must also be true, that the assessor in 2020 can see the sale and say, that valuation in 2019 is incorrect. I should take a look at this. And that is the steps for revision and correction. First, determine that the first assessment, the 2019 assessment, was incorrect, and then revise and correct it for the next date of value. So the sale happened. It is an objective indicator that is incorrect under the Gateway Walden case, which says the bedrock principle is that you should not bend the law to ignore a sale of the subject property, and you can rely on it even if it occurs after the date in question as support for correctness or incorrectness. That is what Assessor Feeney did. She viewed it as incorrect and then did not sell Chase, did not just put it to the value. She did an assessment. She looked at the data. She looked at the evidence. How would you say 2019 was correct? Do I have that wrong? No, 2019 was incorrect based on the objective evidence in the record. And that is why it was changed and revised and corrected in 2020. But I think her testimony was that the 2019 assessment was, and I'm sorry I don't have it in front of me, but it was fair and accurate. Assessor Feeney said the same thing. Is that significant? I don't think it is because if you look at it in the context, based on the information they had in 2019, it was fair given the limited information. Then information came to light that showed that it was incorrect. Assessor Freese said she put it at an artificially low value with the intent to correct it. May I? You may. Okay. Thank you. With the intent to correct it. Assessor Feeney said both it was incorrect, incorrect, or it was fair given the limited information Assessor Freese had. But once she obtained correct data, she saw that it was incorrect. And you can use objective indicators, such as the subject property, to objectively show that that number was not correct. And it's okay that it occurred later in time, because Assessor Feeney could not go back in time and recreate information. She had to continue to move forward. Any questions? No. All right. Thank you, Counsel. You all have time if you're involved. Thank you very much. Counsel, for the FLE, you may begin when ready, and feel free to address the microphone. All right. May it please the Court, my name is Kevin Malloy. I represent the Taxpayer Plaintiff FLE Pasco Melody Farm DST Trust. Your Honors, either we have a quadrennial system or we don't. The longstanding foundation of law in Illinois by statute, by case law, is that outside of counties, every four years, the assessor reviews, values, levies a tax on each individual property. That is not to be changed until the next quadrennial, absent specific statutory authorization. Here, as we've discussed, 2019 was the quadrennial year this property was valued. Thus, until the next general assessment year, 2023, the tax code limits the power of an assessor to change or modify that assessment. The reason we're here in this case is because the new Libertyville Township Assessor in 2020, even though she admitted that the 2019 assessment was correct, that it was a fair valuation, thought she could reassess this property in 2020 as if it were a general assessment year, just because she believed it increased in value by 2020. Tax code does not allow this. Appellant argues that Assessor Feeney had the power to do this under the Revised and Correct Statute, that's Section 9-75 of the code. She did not. The trial court heard evidence from the assessor. The trial court heard evidence from the Board of Review. Overplaint is objection. They called Board of Review members. It was a two-and-a-half-day trial. The trial court heard that evidence, decided to play it clearly and convincingly, which was our burden, proved that the 2020 assessment was without statutory basis. The trial court further concluded that the Board of Review, which merely confirmed, no change, affirmed Assessor Feeney's assessment, does not allow a void action to all of a sudden become legal. And I'll discuss the cases in the law on that. On standard of review, I would point the court to the Golf Trust of America v. Silk case, which this court decided in 2005. That was a tax objection case, filed under Section 23-15 of the tax code, that went to trial, was a bench trial. That was a revised and correct case. The trial court heard from the Supervisor of Assessments and Chief Assessment Officer of Joe Davies County who testified there. The quad year was 1997. Apparently, the township assessor was not doing his or her job, so it fell to the Supervisor of Assessments to do the general assessment. She was not able to do it until 1999. But in doing so, she discovered that there were improvements from 1997 that were not assessed because the 1996 assessment had carried over. The trial court found that that was a proper exercise under 9-75 of a revision and correction. But significant changes to the property is always a basis for a relook, correct? Correct. That's the way that case was about. I believe that. I believe that case is that those improvements were in existence in 1997, and they weren't discovered until she went and did the general assessment, which I think fits in with the trial court's ruling, which I'll discuss. But there, that case was reviewed under a manifest weight of the evidence standard. And I think that's the appropriate scope of review, level of review here. I would say that the trial court did make a statutory ruling as to the June 1st date of the assessment here, the trial court, and that was a limited ruling. The trial court said for an assessor to revise and correct a general assessment, the assessor must limit herself to information that existed during the time frame that the tax code sets forth for the general assessment, which is by June 1. That doesn't require you to go back in time. It looks at what information existed in that period. And I think the Gulf Trust v. Soap case falls within that. I think it makes sense. It has a statutory basis. Intervener has not, appellant has not pointed to any other statute that would counter that. I think it's a proper ruling. But as we point out in our brief, I don't think it's necessary for this court to reach that question. This court can affirm under the Albee case. Now, the Albee case was Albee v. Soap. Again, that was the quad-year assessment was made on residence. The next year it was raised. There the assessing authority, the defendant, admitted that the quad-year assessment was correct. There also was no evidence that there were any improvements that would allow an increase under Section 9-160. The court granted summary judgment on that issue. It remanded because there was a question as to equalization. But again, I think that case is on all fours with the evidence that this trial court heard. Our brief is replete with instances where the assessor admitted the 2019 assessment was correct, that a fair evaluation was made. She asked the Board of Review for the 2019 assessment to confirm that assessment, even when she knew that property had sold. All her testimony, all the evidence, points to the 2019 evaluation being correct. Can I ask you, what is sales chasing and is it wrong? Sales chasing is prohibited under the Uniformity Clause of our Constitution. If, say, for a residence, someone's home is assessed at $250,000 in year one of the quad. Year three, they're able to sell that home for $350,000. The assessor can't say, oh, okay, year three you're valued, I'm going to bump that up. Our tax code system allows for equalization, which is property values increase in a township or in a neighborhood. An assessor has options. An assessor can have a township equalization for a neighborhood, for commercial properties, for different kinds of commercial properties. If those distinct properties are increasing, equalization can take care of that. Also, if the house sold for more because I added a dormer, the assessor can value that specific improvement under Section 916. That did not happen here. The time for reassessment to take into account any sale is the next quarter. Counsel, there's language in Gulf Trust about the assessor's limited to the information that existed at the time. Now there is an allegation concerning stonewalling about not being allowed to conduct investigation or inspections. What is your response on that? Well, the trial court heard evidence on that. I don't think that's what happened here. The record card says Assessor Freeze was able to view the property. She testified that sometimes in about 50% of the time she's able to get more detailed information. Sometimes she's not. That doesn't make 50% of her valuations incorrect. And again, I think it's look at the facts that were in existence. If you're stonewalling, if you say you can't see my property, if you say I know my home is valued as a three-bedroom, I'm not going to let you look at it. I'm going to put up walls. It's really a six-bedroom. Those are facts in existence. If the assessor would find out later, oh, that was not the case, that's a revision and correction. And in the Gulf Trust case, that happened two years later. And the court said, yes, you can correct that. But that's not what happened here. Assessor Freeze assessed as best she could to a January 1, 2019, valuation date. Assessor Feeney did nothing more than she admitted all the evidence she looked at was with an A, with an I, on valuing as of January 1, 2020, as if that were a general assessment here. And counsel says that's allowable. It's not. The trial court said it's not. I would like to say, talk about the Board of Review and the Keogh case. Again, I would point out, the defendant, who's not appealing, and the intervener, the police, they put that at issue. They called Mr. Kozlowski, who's a member of the Board of Review. They put another Board of Review witness on. Evidence of everything that was put before the Board of Review was put before this trial court. And the trial court looked at it and said, there's no evidence that the Board of Review did anything other than affirm or no change. And I go to the, the statute is broad. 1655 is broad. But there's a layer here. In the Carr v. Keogh case, I think it's key, which we discussed. There, it was a non, I think Cook County was on a quadrennial system back then. So it was a non-general assessment year where the assessors went up and down and up and down. But the year in question, the assessors raising of the assessment was without notice. So it was illegal. The Board of Review affirmed that. And the Supreme Court rejected the argument that the Board of Review exercised its judgment and in such exercise raised the valuation. That's the exact same argument you just heard from the appellant. The court rejected that. The record showed, the court said, the record shows that the Board merely confirmed the amount in the usual manner when no change is made. The Pete Gillespie Carr v. Chicago Dock and Canal similarly said the action of the Board of Assessors was void and therefore the Board of Review cannot, by affirming such action, render it valid. That is exactly what happened here. There's, in the appellant's brief, they point to some comments by a Board of Review member, Pazowski. The sum of that is all he's doing is saying we are affirming what Assessor Feeney did. We're confirming what she did. We're no changing. They didn't exercise their discretion, their judgment. And that was a fact. They put that before the trial court. And the trial court decided, I've seen it. I've heard the evidence. I've seen the evidence. You can't make an illegal act legal in this manner. And our Supreme Court has said you can't. May I ask a question? Is it relevant that Freese, the first assessor was Freese, correct? Yes. Testified that she placed, like, other income at that lower figure, at a lower figure, because she, I believe her testimony was something to the effect that, you know, I knew it would be looked at again soon because I didn't have enough information this year. Something to that effect. But given that, and excuse me for giving you the mouthful of a statutory site, but I'm sure you're more familiar with it than I. 35 ILCS 23-15 sub B sub 3 says the court should consider a tax objection without regard to intent or motivation of any assessing official. Is that significant here? I think it's significant as to what Assessor Feeney did. I think it's, going back to Aldi, the court said you need to look at the reason for the reassessment, the reason for the revision and correction. And Assessor Feeney said, I'm revising. The trial court found her not credible based on all her admissions that she found, she considered the 2019 assessment to be a fair evaluation. So, therefore, she couldn't have revised and corrected. As to Assessor Freese, she was using estimates. And the fact that an assessor would say, I'm going to estimate it on the low end because I'm going to correct it. I'm just going to correct it. The next year, that's not how it works. If values go up, equalization can take care of that. The assessor can file, as the trial court mentioned, the assessor can file an undervaluation complaint with the Board of Review. She did not do that. So there are options. But the option, the route that was taken here, was without statutory authority. And it can't simply be confirmed by a Board of Review, no change. I have one question. Sure. Can the board exercise its authority to change an assessment? And if so, what events have to trigger that? The board can under statute. An event that could trigger it is, I think an event that could trigger that would have to be within the statutory scheme. One is the assessor can make an undervaluation complaint. One is the board can do an on-and-off motion with notice and say this is what we're considering. What the board can't do is look at an increase. The only reason this was before the Board of Review in 2020 was because of Assessor Feeney's illegal reassessment. And I think that's where the Keogh case adds that layer. And Counsel for Appellants said it can do what would be just to take the illegal route to get something before the Board of Review to then let it confirm it is not just. And I think, again, our Supreme Court over 100 years ago now looked at that and said, no, you cannot do it that way. Okay. All right. All right. Thank you very much, Counsel. Thank you, Your Honor. Counsel, you may begin when ready. Thank you. To jump off of the last question, I did want to emphasize that the statute does not have any limitations or process restrictions. The Board of Review can make any adjustments as it determines just at any point in proceeding on its own motion or, as I stated before, when it's presented with the case. And the Keogh case is distinctly different because in the Keogh case, there was no mention of a hearing or discussion before the Board of Review, just the statement that the column indicated it was confirmed. Here, there is a hearing. Now, these hearings are 15-minute hearings. So there isn't going to be days of testimony, hours of testimony. They are 15-minute hearings. But it was clear that this issue was raised by the plaintiff, the illegal assessment. There is evidence presented. There is discussion of similar properties and the correct valuation of these properties and statements that the property was not up to its value in 2019, i.e., it was not a representation of the fair market value of that property. Thus, it was not a just assessment because a just assessment must be one-third of the fair market value. This was deliberation and discussion. No, it wasn't hours and hours of testimony, but that's not realistic for how these. Counsel, procedurally, how did this get to the Board of Review? So the assessment made the revision and correction. Notice that that went out to the property owner, and the property owner filed an appeal with the Board of Review, challenging the market value, saying that it was. . . Was the revision and correction of the 2019 assessment or 2020? So how it works is that if there is a revision and correction made, it has to be made in the next tax year. So you can't go back and reopen the books. If you make a determination that the prior year was incorrect, the revision and correction must be made for the next tax year, so the 1-1-20-20 tax year. If it was determined in, I guess, 1-1-21, it would be for that tax year. So the data had to be in for 1-1-20 once the determination was made that the 19 valuation was not correct. As far as the questions about stonewalling and information that existed at the time, Assessor Affini did find out later that the fees for elder income were incorrect based on data that would have existed at the time for 2019. The rental spaces and parking fees would have existed in 2019, but for the property owner stonewalling and refusing to provide that information, Assessor Frees would have had it and been able to make a correct estimation as to that value. The difference between $12,000 and $500,000 is staggering. This isn't a small adjustment made on discretion or estimates that are common. This is a huge amount that is objectively incorrect. Additionally, the same information that was the same in 19 and 20 would have been the number of studio and one-bedroom apartments. The property was, you know, substantially complete with its build-out as far as the number breakdown of units, but Assessor Frees did not parse out studio versus one-bedroom, which had different rents as well. So again, that is also information that was learned later, but existed as of the time in 2019. So both of those things also bolster the ability to find that the 2019 valuation was incorrect. I did also want to take a look at the fact that the trial court's determination that the plaintiff ultimately met its burden to overcome the presumption of validity was heavily relied on the fact that the assessor relied on data that did not exist when the 2019 general assessment was completed. And as I already discussed earlier, the Gateway Walden case held the opposite. That information that occurs later can be used to look at the correctness of a prior tax year. And then finally, I did want to discuss as to whether or not the ultimate valuation is at issue in this case, because it has always been the appellant's position that valuation is at issue, meaning that the court has the ability to determine what is the correct valuation in this case. And it's a foundation element, because in order to determine if the market value in 2019 was correct, we have to look at the market value for that year and compare it to the market value for the following year. And as I already discussed, the courts have stated that the bedrock principle in property tax valuation is that the best and nearly conclusive evidence of a property's value is a recent arm's length sale. And the court in Gateway repeatedly emphasized that the law should not be skewed as to ignore this principle. Valuation was raised at the Board of Review level by the plaintiff. And the court's role is reviewing the Board of Review's determination. And so the plaintiff can't just pick which parts of the Board of Review hearing they want the court to look at in the light most favorable to them, even though their complaint also raised the fact that the assessment was incorrect. So again, correctness and what the correct value is, is at issue in this case. And we ask that for any of the bases raised today that you overturn the trial court's ruling. Thank you very much, Counsel. We will take this matter under advisement and issue a ruling in due course. Thank you for your arguments. We will adjourn until the 10.30 case.